**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**MICHAEL PTAK, JR.,**

        **Petitioner,**

        v.                                    9:08-CV-0409
                                                         (TJM)

**SUPERINTENDENT,**

        **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**

**FOR THE PETITIONER**:                          **OF COUNSEL:**

**OFFICE OF GILLES R. ABITBOL**        **GILLES R. ABITBOL, Esq.**
121 Green Acres Drive
Liverpool, NY 13090

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**                **LEILANI RODRIGUEZ, ESQ.**
Office of the Attorney General             Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**THOMAS J. MCAVOY**
**UNITED STATES DISTRICT JUDGE**

**MEMORANDUM-DECISION AND ORDER**

**I.**    **Background**[1]

    **A.**    **State Court Proceedings**

    According to the testimony adduced at trial, in January, 2002, S.B.[2] was eleven years old

---

[1] The background information contained in this Memorandum-Decision and Order is derived from the state court records supplied to this Court.

[2] Under New York law:

and being cared for by Dawn Ptak, who ran a daycare center from her home in Syracuse, New York. *See* Transcript of Trial of Michael Ptak (1/24/00) ("Trial Tr.") at pp. 361-63, 366. Along with Dawn, also living in the Ptak household was Dawn's husband Michael Ptak, Sr., their daughter Brittany Ptak and petitioner, *pro se* Michael Ptak, Jr., Dawn's son ("Ptak"). *Id.* at p. 362.

In the fall of 2001, S.B. would go to Ptak's bedroom in his parent's house and "listen to music, watch TV and play Playstation." *Id.* at p. 365. She thought Ptak was "cool to hang out with" because she could "get away from the kids and stuff." *Id.* at p. 367. On occasion, Ptak would take S.B. with him to the cemetery, to get food, and to his girlfriend's apartment. *Id.* Sometime before Thanksgiving, 2001, S.B. was in Ptak's bedroom and he informed her that he wanted her to perform oral sex on him. *Id.* at p. 373. Soon after this conversation, S.B. put her mouth on Ptak's penis for "a few minutes" and "sperm" came out of his penis. *Id.* at pp. 374-75. Around that time, Ptak would also put his hands on her chest and "rub[] them" over her clothes. *Id.* at pp. 375-76.

The record also reflects that in July, 2003, Detective J. Bernozzi of the Abused Persons Unit of the Syracuse Police Department received a report regarding two children who were possibly being abused at the daycare located in the Ptak household. *Id.* at pp. 470-71. After interviewing those children, Detective Bernozzi obtained a search warrant regarding that residence

---

> [t]he identity of any victim of a sex offense ... shall be confidential. No ... court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection.

New York's Civil Rights Law § 50-b. In light of this provision, the Court will refer to the victim by her initials so as to ensure her privacy. *See Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 109 n.4 (2d Cir. 2000) (substantial compliance with this statute is obtained where the court refers to the victim by use of initials).

which was executed on the Ptak house on July 24, 2003. *Id.* at p. 472. During the search, Detective Bernozzi came across a letter written to Michael Ptak, Sr., from S.B., who at the time was living in North Carolina, which suggested that S.B. may have been another victim of the Ptak family. *Id.* at pp. 472-73. Detective Bernozzi thereafter contacted Child Protective Services and the local police department in North Carolina to alert them of the possibility that S.B. may have been a victim of a crime in New York. *Id.* at pp. 473-77.

Detective Greg Spradlin of the Hoke County Sheriff's Department in North Carolina eventually obtained a statement from S.B. regarding Ptak, which was subsequently sent via facsimile transmission to Detective Bernozzi in September, 2003. *Id.* at pp. 479-80. Upon reviewing that document, Detective Bernozzi made arrangements for S.B. and her mother to come to Syracuse to be formally interviewed. *Id.* at p. 481. On October 15, 2003, Detective Bernozzi interviewed S.B. *Id.* At that time, she claimed that while in Syracuse, New York, she had engaged in sexual conduct with Ptak, his father and a family friend, Anthony Lake. *Id.* at pp. 484-85. Those three men were thereafter placed under arrest. *Id.* at pp. 485-86.

As a result of the foregoing, Ptak was charged by an Onondaga County Grand Jury with Sodomy in the First Degree, in violation of N.Y. Penal Law ("Penal Law") § 130.50(3); Sexual Abuse in the First Degree, contrary to Penal Law § 130.65(3); and Endangering the Welfare of a Child, in violation of Penal Law § 260.10(10). *See* Indictment Number 2004-0166-1-2. ("Indictment"). On January 31, 2005, Ptak was tried on those charges before a jury in Onondaga County Court with County Court Judge Joseph E. Fahey presiding. At the conclusion of that trial, the jury found Ptak guilty of all charges. Trial Tr. at pp. 664-65.

On March 30, 2005, Ptak appeared before Judge Fahey for sentencing. At that proceeding,

the court sentenced Ptak to a determinate term of twenty years imprisonment on the first degree sodomy conviction, a determinate term of seven years imprisonment on the sexual abuse conviction, and a one year term of imprisonment on the endangering the welfare of a child conviction, with all sentences to run concurrently. *See* Sentencing Transcript (3/30/05) at pp. 12-14.

Ptak filed an appeal of his conviction and sentence with the New York State Supreme Court Appellate Division, Fourth Department. *See* Appellate Brief on Appeal (8/4/06) ("App. Br."). In that filing, counsel argued that: i) the verdict was against the weight of the evidence; ii) the prosecutor's misconduct at trial deprived Ptak of a fair trial; and iii) the sentence imposed on Ptak was unduly harsh and excessive. *Id.*, Points I through III. That appeal was opposed by the Onondaga County District Attorney, and on February 2, 2007, the Appellate Division affirmed Ptak's convictions and sentences. *See People v. Ptak*, 37 A.D.3d 1081 (4th Dept. 2007). The New York's Court of Appeals thereafter denied Ptak's application for leave to appeal that decision of the Appellate Division. *People v. Ptak*, 8 N.Y.3d 949 (2007).

**B.     This Action**

On April 15, 2008, petitioner filed, with the assistance of counsel, a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 1. Pursuant to this Court's directive filed April 22, 2008, *see* Dkt. No. 4, counsel filed an amended petition herein. *See* Dkt. No. 5 ("Am. Pet."). In that amended application, Ptak argues:  i) the time frame alleged in the Indictment prevented Ptak from asserting an alibi to the charges against him; ii) that a defect in the Indictment prevented Ptak from offering exculpatory evidence about a piercing Ptak underwent regarding his penis; and iii) Ptak received the ineffective assistance of trial counsel because she:  a) refused to

4

request that a prospective juror who both knew and disliked Ptak be removed from the jury; and b) failed to ensure that the jury was aware of the fact that Ptak had pierced his penis. *See* Am. Pet., Grounds One through Four.[3]

The respondent filed an answer in opposition to the amended petition, Dkt. No. 12, as well as a memorandum of law in opposition to such pleading. *See* Dkt. No. 13 ("Resp. Mem."). Additionally, the respondent has provided the Court with various state court records, including the trial transcript, relating to Ptak's convictions. In opposing his application for habeas intervention, respondent asserts that two of Ptak's claims are procedurally barred, and that all of his claims lack merit. *See* Resp. Mem.

This matter is currently before this Court for disposition.

## II.  Discussion

### A.  Procedurally Barred Claims

As noted above, respondent claims that petitioner is procedurally barred from pursuing two of the grounds he has asserted herein. *See* Resp. Mem. In support of this argument, respondent contends that because Ptak has never asserted the claims he has raised in his first and second grounds for relief in any state-court challenge to his conviction, he is procedurally barred from obtaining habeas relief as to these two grounds. *Id.* at pp. 12-13.

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....' " *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269

---

[3] Petitioner's third and fourth grounds for relief both allege that he received the ineffective assistance of counsel. *See* Am. Pet., Grounds Three, Four.

F.3d 78, 89 (2d Cir. 2001)); *see also Hill v. Mance,* 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009).

This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted).  As the Supreme Court noted in *O'Sullivan*, "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.*, 526 U.S. at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[4]

    A petitioner exhausts available state remedies in the federal habeas context by:  "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Genl.*, 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).  A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *see also Berry v. Hulihan*, No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007).  A "state prisoner does not 'fairly present' a claim to a state court" where the appellate brief "does not alert [the court] to the presence of a federal

---

[4] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 845 (quotation and citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

6

claim...." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*).

The Court's review of the record confirms respondent's claim that the theories in petitioner's first and second grounds for relief were not fully exhausted by Ptak in the state courts. Specifically, they were not asserted by counsel in her appellate brief, *see* App. Br., and Ptak has declared that he has not pursued any collateral challenges regarding his convictions subsequent to that appeal. *See* Am. Pet. at ¶ 10.

When claims have not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).

Petitioner cannot now pursue either of the above theories through another appeal to the Fourth Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91 (citations omitted). Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing New York's Criminal Procedure Law ("CPL"), § 440.10(2)(c)), Ptak could not now properly raise these claims, which relate to the Indictment and are therefore necessarily based on the record, in a motion to vacate his judgment of conviction filed pursuant to CPL § 440.10. *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994). Therefore, these two claims are "deemed exhausted" for purposes of Ptak's habeas application. *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v.*

*Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000). Although these claims are "deemed exhausted," they are procedurally defaulted. *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Ciochenda v. Artus*, No. 06 Civ. 5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009) (unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

Federal courts may only consider the substance of procedurally forfeited claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[5] *Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen*, 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *King v. Greiner*, 210 F.Supp.2d 177, 182 (E.D.N.Y. 2002) (court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence"); *Lora v. West*, No. 04Civ.1902, 2005 WL 372295, at *9 (S.D.N.Y. Feb. 17, 2005) (citations omitted); *Morales v. Sabourin*, No. 00 Civ. 8773, 2002 WL 32375006, at *11 (S.D.N.Y. Apr. 30, 2002). As Senior Judge Neal P. McCurn noted in *Johnson v. Ricks*, No. 02-CV-1366, 2007 WL 3171782 (Oct. 29, 2007) (McCurn, S.J.), *appeal dismissed sub nom. Johnson v. Senkowski et al.*, No. 07-5182-pr (2d Cir.), *cert. denied Johnson v. Artus*, ___ U.S. ___,

---

[5] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

129 S.Ct. 755 (2008):

> To establish cause in this context, a petitioner must show that "'some objective external factor impeded his ability to comply'" with the rule that resulted in the procedural bar. *Pinero v. Greiner*, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (quoting *Restrepo v. Kelly*, 178 F.3d 634, 638-39 (2d Cir. 1999)); *see also Wilson* [*v. Superintendent, Attica Corr. Facility*, No. 00-CV-0767], 2003 WL 22765351, at *3 [(N.D.N.Y. Nov. 24, 2003) (Sharpe, J.)) (citing *Coleman*, 501 U.S. at 753). Examples of such "external factors" include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's trial, direct appeal or any previously filed CPL motion. *E.g.*, *Wilson*, 2003 WL 22765351, at *3 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *see*, *e.g.*, *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994) (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir.1993).

*Johnson*, 2007 WL 3171782, at *16.

In an apparent effort to establish cause for his default as to his first ground for relief, Ptak asserts that he "did not know how to formulate the fact that the offense was not precisely set in a time frame." Am. Pet. at ¶ 13. As to his second ground, Ptak declares that he "did not know that either his Attorney or the District Attorney would not disclose his exculpatory evidence" regarding the piercing Ptak underwent. *Id*. These statements, however, fall far short of establishing legal cause for Ptak's default. Significantly, he has never explained why he never argued in the state courts that his appellate counsel rendered ineffective assistance by failing to assert the above arguments on appeal.

Since Ptak has not established cause for his failure to fully exhaust these theories,[6] this

---

[6] Habeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies. *Fink v. Bennett*, 514 F.Supp.2d 383, 388 (N.D.N.Y. 2007) (McCurn, J.) (collecting cases).

Court need not decide whether he suffered prejudice, because federal habeas relief is unavailable as to procedurally barred claims under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice are demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*); *Moore v. Greiner*, No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct. 19, 2005) (citing *Stepney*); *Lutes v. Ricks*, No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing *Stepney*) (other citation omitted); *Pou v. Keane*, 977 F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

The finding that Ptak has failed to establish cause for his default does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims if the court is convinced that a fundamental miscarriage of justice would occur if the defaulted claims were not considered by the federal court.  On this issue, however, the Second Circuit has noted that:

> the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995);  .... " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623 .... "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup*, 513 U.S. [at] 327-28 ... (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at

*8; *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004).

In conjunction with Ptak's petition, the transcript of his trial has been reviewed. That review has satisfied this Court that Ptak is not innocent of any of the charges of which he was found guilty.[7] Since he has failed to make a credible claim of actual innocence in this matter, he cannot now seek safe harbor from the procedural denial of these grounds based upon a claim of actual innocence. The Court therefore denies, as procedurally forfeited, Ptak's first and second grounds for relief.

### B.     Remaining Claims

As with his first two grounds for relief, Ptak has never argued in the state courts that he received the ineffective assistance of trial counsel. *See*, *e.g.*, App. Br.; Am. Pet. at ¶ 10. However, respondent correctly notes that, unlike his other two claims for relief, this Court cannot properly deem these claims exhausted because Ptak may still be able to raise his ineffective assistance of counsel claims in a CPL § 440.10 motion filed in the County Court. *See* Resp. Mem. at p. 10; *see also People v. Douglas*, 205 A.D.2d 280, 291 (1st Dept. 1994) ("there is no time limit on claims pursuant to CPL § 440.10, and a defendant may move at *nisi prius* to vacate the judgment at any time") (internal quotation and citation omitted), *aff'd*, *People v. Douglas*, 85 N.Y.2d 961 (1995). In light of the above, it would be inappropriate for this Court to deem Ptak's unexhausted claims alleging ineffective assistance of trial counsel to be both exhausted and procedurally barred.

Although 28 U.S.C. § 2254(b)(2) permits federal courts to deny unexhausted habeas

---

[7] In sentencing Ptak, Judge Fahey noted that he had "no doubt" that Ptak had engaged in the criminal acts of which he was accused. *See* Sentencing Tr. at p. 13.

11

claims,[8] the Second Circuit has not yet discussed the standard of review that district courts should utilize when reviewing such a claim. *See Brown v. State of New York*, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005). In *Colorio v. Hornbeck*, No. 05 CV 4984, 2009 WL 811588 (E.D.N.Y. Mar. 3, 2009), the court discussed the two different approaches district courts have adopted in addressing the substance of unexhausted claims. Specifically, the *Colorio* court noted that:

> The majority of courts in this circuit have followed a "patently frivolous" standard, [*Brown*, 374 F.Supp.2d at 318] (citing *Naranjo v. Filion,* No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (Peck, Mag. J.) (collecting cases)) (footnote omitted), while a minority have exercised § 2254(b)(2) discretionary review when " 'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' " *Hernandez v. Lord*, No. 00-CIV-2306, 2000 WL 1010975, at *4 n. 8 (S.D.N.Y. Jul. 21, 2000) (Peck, Mag. J.) (collecting and analyzing cases).

Since, as is discussed more fully *post*, this Court concludes that Ptak's ineffective assistance claims must be dismissed under either standard, it need not determine which of the above-referenced tests should be applied in considering petitioner's unexhausted claims.

### i.     Ground Three

In support of his third ground for relief, Ptak argues that a member of the jury that ultimately convicted him "knew [Ptak] and declined to say so." Am. Pet., Ground Three. This claim continues:

> [Ptak] knew that she disliked his physical appearance because of his piercings and that she had a negative preconceived idea about him. Although [Ptak] made that point clear to his Counsel before trial and during the jury selection, Counsel ignored the information and proceeded without taking the information into consideration, ineffectively assisting [Ptak].

---

[8] A federal court may deny – but not grant – a habeas petition based upon an unexhausted claim. *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

*Id.*

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must typically show both:  a) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and b) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established by the Supreme Court in *Strickland*).

In conjunction with this claim, the jury *voir dire* has been reviewed.  That review establishes that no record evidence supports Ptak's claim that during jury selection, he advised his counsel about the juror that purportedly knew and disliked Ptak.  *See* Trial Tr. at pp. 17-323.  Moreover, during that *voir dire*, Judge Fahey specifically asked potential jurors whether they knew Ptak, and no individual indicated to the court that she (or he) knew Ptak.  *Id.* at pp. 50, 131 and 183.  Furthermore, defense counsel had a peremptory challenge available for her use at the conclusion of jury selection.  *Id.* at pp. 315-23.  It strains credulity to believe that defense counsel failed to exercise that challenge to strike an individual upon learning from Ptak that the prospective juror both knew and disliked Ptak.

The petitioner bears the burden of proving in his habeas petition that his constitutional rights were violated in the state court proceeding.  *See Whitaker v. Meachum*, 123 F.3d 714, 716

(2d Cir. 1997) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); *Lovacco v. Kelly*, No. 99 CV 3094, 2005 WL 2482518, at *3 (S.D.N.Y. Oct. 7, 2005) (citation omitted); *Frazier v. New York*, 187 F.Supp.2d 102, 108 (S.D.N.Y. 2002) (citation omitted). By failing to provide the Court with any record evidence regarding this theory, Ptak "has failed to shoulder the burden of proof he bears" with respect to this claim. *Moss v. Phillips*, No. 9:03-CV-1496, 2008 WL 2080553, at *6 (N.D.N.Y. May 15, 2008) (Kahn, J.) (citing *Gillis v. Edwards*, 445 F.Supp.2d 221, 233 (N.D.N.Y. 2006) (McCurn, S.J.)).

His failure of proof on this claim also represents a failure on Ptak's part to overcome the presumption of impartiality which exists regarding all sworn jurors. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961); *Curkendall v. Mazzuca*, No. 05-CV-688S, 2008 WL 3851820, at *23-24 (W.D.N.Y. Aug. 15, 2008) (denying habeas claim where petitioner failed to provide evidence rebutting the presumption of impartiality concerning jurors that convicted him) (citing *Irvin*).

Finally, this aspect of Ptak's claim appears to overlook the well-settled legal precept that courts are loathe to second guess the decisions of counsel during jury selection. *Doleo v. Reynolds*, No. 00 CIV.7927, 2002 WL 922260, at *5 (S.D.N.Y. May 7, 2002) ("It is not the role of the court to second-guess counsel's reasonable strategic decisions at jury selection, especially considering that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment ' ") (quoting *Strickland*, 466 U.S. at 693).

For all of these reasons, the Court finds that Ptak has not raised even a colorable federal claim regarding this theory alleging ineffective assistance of counsel. Since this claim is

also patently frivolous, the Court denies Ptak's third ground for relief.

      **ii.**      **Ground Four**

In his fourth and final claim, Ptak faults counsel for failing to bring to the jury's attention the fact that Ptak had pierced his penis. Am. Pet., Ground Four. Specifically, he claims that counsel was aware of the fact that Ptak had pierced his penis, and that such fact "could have been ... exonerating evidence if disclosed to the jury and not corroborated by the testimony of the alleged victim on the stand." Am. Pet., Ground Four. Ptak argues that "Counsel decided not to inform the jury of [Ptak's] recognizable appendix [*sic*] and by doing so denied [Ptak] the right to present ... exculpatory and exonerating evidence to the jury." *Id.*

The record reflects the following exchange during the course of the District Attorney's direct examination of S.B.:

> Q.     [S.B], I want to talk about that same time frame. You had mentioned pictures of people with tattoos and body piercing. Is that something you talked about with [Ptak]?
>
> Defense Counsel:     Objection, Your Honor. Relevance.
>
> The Court:     Yes, I will sustain it.
>
> Q.     Did you have a common interest with [Ptak] about tattoos and body piercing?
>
> Defense Counsel:     Objection, Your Honor. Relevance.
>
> Prosecutor:     Judge, could I approach?
>
> The Court:     Yes.

Trial Tr. at p. 372. An off-the-record conference was thereafter held between the court and

counsel, after which the prosecutor embarked on a different line of questioning with the victim. *Id.* at p. 373.

The above excerpt makes clear that defense counsel made a strategic decision to ensure that the jury did *not* hear evidence regarding body piercings. "[S]trategic choices of trial counsel are virtually unchallengeable in habeas corpus proceedings." *Silent v. Perlmann*, No. 07-CV-4524, 2008 WL 5113418, at *11 (E.D.N.Y. Nov. 25, 2008) (citing *Bonneau v. Scully*, 86 Civ. 270, 1991 WL 90739, at *1 (S.D.N.Y. May 23, 1991), *aff'd*, 956 F.2d 1160 (2d Cir. 1992)). The record conclusively demonstrates that trial counsel intentionally prevented the jury from hearing evidence about body piercings at trial, and petitioner has not demonstrated that such trial strategy was objectively unreasonable. Moreover, in light of the compelling nature of the victim's testimony regarding Ptak's criminal conduct, he cannot establish that there is a reasonable probability that if the jury was aware of the piercing to his penis, the outcome of his trial would have been different. He has therefore not asserted a colorable federal claim regarding this aspect of his ineffective assistance claim. Alternatively, this Court finds such claim patently frivolous. This Court therefore denies his fourth and final ground for relief.

### III.  Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[9]

---

[9] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**THEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that Ptak's amended petition (Dkt. No. 5) is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by electronic mail, and it is further

**ORDERED**, that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Dated:  August 13, 2009

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge

---

2253(c)."  *See* Fed.R.App.P. 22(b).